RECEIVED

FEB 1 5 2011

TONY R. MOORE, CLERK
BY ————————
        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLYDE HEAD

VERSUS

CHESAPEAKE OPERATING, INC.
CHESAPEAKE ENERGY MARKETING, INC.

CIVIL ACTION NO: 10-0444

JUDGE DONALD E. WALTER

MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Defendants Chesapeake Operating, Inc., and Chesapeake Energy Marketing, Inc., (collectively "Chesapeake"). [Doc. #17].[1] Plaintiff, Clyde Head ("Head"), opposes this motion. [Doc. #23].  Intervenor Plaintiff, Liberty Mutual Insurance Co. ("Liberty Mutual"), also opposes the motion. [Docs. #19 and 27].  For the reasons stated herein, Defendants' Motion for Summary Judgment is hereby **GRANTED**.  Head's claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND INFORMATION

Head filed suit against Chesapeake following an on-the-job injury he sustained while working as a welder's helper on a natural gas pipeline construction site.  [Doc. #1-1 at ¶ 2].   Head was employed by TSC Sieber Services, Inc. ("TSC Sieber"), a contractor hired by Chesapeake in February 2007 to construct pipelines.  [Doc. # 26, Ex. A].   On March 6, 2009, in Logansport, Louisiana, Head was operating a grinder on a piece of pipe when the grinding disc shattered. [Doc.

---

[1] Plaintiff filed suit against Chesapeake Operating, Inc., and Chesapeake Energy Marketing, Inc., which are affiliated entities within the Chesapeake Group.  Per the terms of the Master Service Agreement, all subsidiaries or affiliates of Chesapeake Operating, Inc., are subject to and bound by the contract.  [Doc. #26, Ex. A -title page].  As such, the Court will refer to the entities collectively as "Chesapeake".

#1-1 at ¶ 2].  The shattered pieces were propelled from the grinder at a high rate of speed.  *Id.*  One of the pieces struck Head in his lower left jaw, resulting in a large laceration, broken bones, and broken teeth. [*Id.]*  Head was transported to the emergency room at Willis Knighten hospital in Shreveport, Louisiana.  [*Id.* at ¶¶ 2-3]. He was later transferred to Louisiana State University Health Sciences Center for surgery.  [*Id.* at ¶ 3].

Head alleges that while he was in the Willis Knighten emergency room he was visited by both his immediate supervisor for TSC Sieber and by the Chesapeake's "head safety man"in Louisiana.  [Doc. #1-1 at ¶3; Doc. #23, Head Deposition at 30-32].  Head alleges that the Chesapeake safety man asked him several questions about the accident and expressed that he felt somewhat responsible because he had been considering requiring the use of guards but had not yet implemented the change. [*Id.*]  Head states that on March 7, 2009, the day after the accident, the Chesapeake safety man shut down the TSC Sieber pipeline operation until all of the welders could purchase new grinders with disc guards.[*Id.*] Additionally, Head alleges that the Chesapeake safety man warned the welders that anyone caught grinding without a guard would be fired and that he later followed through on the warning by firing a welder for non-compliance. [*Id.*]

As a result of the accident, Head states that he suffered a broken jaw, broken teeth, and a severed facial nerve that continues to cause numbness in his chin, jaw, and bottom lip.  [Doc. #1-1 at ¶ 5]. Head states that the chin and lip numbness significantly affects his speech and likely always will. [*Id.* at ¶ 7].

Head has collected workers' compensation benefits through TSC Sieber's insurer, Liberty Mutual. [*Id.*]  Liberty Mutual has paid disability compensation benefits to Head in the amount of $19,055.44 and medical expenses in the amount of $42,610.06. [Doc. #12 at 3; Doc. #23, Head

Deposition at 88-91]. Liberty Mutual filed a Complaint in Intervention seeking reimbursement of payments made to Head, and an offset for any future payments out of the proceeds of any judgment rendered against the Defendants. [Doc. #12]. TSC Sieber declared bankruptcy before Head filed this lawsuit.

Head alleges that Chesapeake was negligent by not requiring all welders to have the proper guard shielding the grinding disc and that this alleged negligence was the cause of the accident and his resulting injuries. [Doc. #1-1 at ¶ 6]. Head seeks the following forms of relief: (1) damages for lifetime numbness of his chin and lip, (2) damages for impaired speech, (3) reimbursement by Chesapeake to Liberty Mutual, and (4) that Chesapeake provide him with a safety related job so that he can warn other welders about the dangers of working without a grinder guard. [*Id.* at ¶ 7].

Chesapeake moved to dismiss Plaintiff's claims with prejudice, arguing that it is a "statutory employer" under the Louisiana Workers' Compensation Act and, therefore, is provided tort immunity as a matter of law. [Doc. #17].

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial." *Celotex Corp. v.. Catrett*, 477 U.S. 317, 322 (1986). "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*,

3

401 F.3d 347, 349 (5th Cir.2005). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir.1995) (internal quotation and citation omitted). If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (internal citation omitted).

"An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir.2006) (internal citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir.2003) (internal citation omitted). The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir.2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir.2004) (internal citation and quotation omitted).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994). Likewise, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir.2010); *see also Delta & Pine Land*

4

*Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir.2008). "A party cannot defeat summary judgment with 'only a scintilla of evidence." *Delta & Pine Land Co.*, 530 F.3d 394, 399 (5th Cir. 2008) (quotation and citation omitted).

Rather, a party must support any assertion that a fact cannot be or is genuinely disputed by "(a) citing to particular parts of materials in the record ...; or (b) showing that the materials cited do not establish the absence or present of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." Fed. R. Civ. P. 56(c)(1). Affidavits cannot defeat summary judgment unless they contain competent and otherwise admissible evidence. Fed. R. Civ. P. 56(c)(4). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir.2000).

## LAW AND ANALYSIS

### I.    Louisiana Workers' Compensation Act

The State of Louisiana enacted workers' compensation legislation in the early twentieth century "not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery under tort law were inadequate to protect these individuals." *Allen v. State of Louisiana*, 842 So.2d 373, 377 (La. 2003) (internal citations omitted).   At the time the legislation was passed less than twenty-five percent of injured workers successfully recovered compensation for work-related accidents. *Id.* (citing *Roberts v. Sewerage and Water Board of New Orleans*, 634 So.2d 341, 345 (1994)).  "The legislation enacted represents a compromise between the competing interests of the employers and employees: the employer gives up the defense it would

5

otherwise enjoy in cases where it was not a fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay." *Allen,* 842 So.2d at 377.

To this end, the Louisiana Workers' Compensation Act is designated as the exclusive avenue of recovery for an injured worker in most cases.

> Except for intentional acts [], the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled compensation [], shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages [] against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

La. Rev. Stat. Ann. § 23:1032(A)(1)(a).    A principal is defined by the act as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La. Rev. Stat. Ann.§ 23:1032(A)(2).

Workers' compensation legislation incorporates the concern of lawmakers that "employers may attempt to circumvent their statutory obligations through the use of intermediaries, such as contractors and subcontractors." *Berthelot v. Murhy Oil, Inc. et al,* 2010 WL 103871, at *3 (E.D. La. Jan. 7, 2010). To remedy this problem the Louisiana legislature settled on the doctrine of the "statutory employer". *Id.;* La. Rev. Stat. Ann. § 23:1032(A)(1)(a). This doctrine expands the scope of entities potentially required to compensate employees in the form of workers compensation benefits, making it more difficult for entities to avoid payment of workers' compensation benefits by operating various layers of intermediary entities. *Id.*    Conversely, this doctrine necessarily "expands the range of entities that may avoid tort liability, even though these entities may never be

6

asked to pay workers' compensation benefits for a particular injury." *Id.*

The statutory employer doctrine is codified in La. Rev. Stat. Ann. § 23:1061 as follows:

A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, ***unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees.*** This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

(emphasis added).

In this case Chesapeake has presented a properly authenticated copy of a Master Service Agreement with TSC Sieber. [Doc. #26, Ex. A]. Contained within the Master Service Agreement is a provision that specifically classifies Chesapeake as a statutory employer:

> In all cases where [TSC Sieber's] employees (defined to include [TSC Sieber's] direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act La. R.S. 23:1021 *et seq* [Chesapeake] and [TSC Sieber] agree that all work and operations performed by [TSC Sieber] and its employees pursuant to the Agreement are an integral part of and are essential to the ability of [Chesapeake] to generate [Chesapeake's] goods, products and services for purposes of La. R.S. 23:1062(A)(1). **Furthermore, [Chesapeake] and [TSC Sieber] agree that [Chesapeake] is the statutory employer of [TSC Sieber's] employees for purposes of La. R.S. 23:1061(A)(3).**

[Doc. #26, Ex. A at 18, ¶ 15 (emphasis added)].[2]   Because Chesapeake has provided a written contract recognizing that a statutory employer relationship exists, there is a rebuttable presumption that Chesapeake is a statutory employer. Head, acting *pro se*, filed an opposition to Chesapeake's motion for summary judgment. [Doc. #23]. However, the opposition does not address the validity of the Master Service Agreement or offer any evidence to rebut the presumption that Chesapeake is the statutory employer. [Doc. #23].[3]

Whether Chesapeake is the statutory employer of Head is a question of law which is to be determined by the Court. *Ramos v. Tulane University of Louisiana*, 951 So.2d 1267, 1269 (La. App. 4th Cir. 2007). The plain language of the contract clearly states that TSC Sieber and Chesapeake

---

[2] The Court has used the proper names "Chesapeake" and "TSC Sieber" rather than "Company" and "Contractor" for clarity.

[3] Liberty Mutual challenged the validity of the Master Service Agreement because it was not authenticated by affidavit in Chesapeake's original motion. [Doc. #19]. The Court finds that Chesapeake properly authenticated the Master Service Agreement in its reply brief. [Doc. #26, Ex. A].

agreed that Chesapeake would be named as a statutory employer of TSC Sieber employees who were working on Chesapeake projects. [Doc. #Doc. #26, Ex. A at 18, ¶ 15].  Further, it is undisputed that the work provided by TSC Sieber and its employees (building natural gas pipelines) was an integral part of Chesapeake's ability to generate its main product – natural gas.  Accordingly, the Court concludes that Chesapeake is a statutory employer.

As a statutory employer, Chesapeake is afforded tort immunity under the Louisiana Workers' Compensation Act for compensable injuries suffered by TSC Sieber employees. *See* La. Rev. Stat. Ann. §§23:1032(A)(1)(a) and 23:1061(A)(1).  There is no dispute that Head suffered a work-related injury while operating a grinder under the direct supervision of TSC Sieber.  Further, Head has not asserted that the intentional act exception to tort immunity applies in this case.

Workers' compensation is an employee's exclusive remedy against his employer for an unintentional injury covered by the act, but this does not prevent an employee from recovering from his employer under general tort law for intentional acts.  *Caudle v. Betts*, 512 So.2d 389, 390 (La.1987).  The intentional act exception applies to injuries caused by traditional torts such as assault and battery. *See Gagnard v. Baldridge*, 612 So.2d 732 (La. 1993).  Employees have often attempted to use the intentional tort exception as an avenue to sue their employer for tort damages.  Louisiana Court have determined that the requisite  "intent" required for an intentional act is such that "the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." *Bazley v. Tortorich*, 397 So.2d 475, 482 (La.1981).  Louisiana "courts have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety

9

equipment by an employer does not constitute intentional wrongdoing." *Micele v. CPC of Louisiana, Inc.*, 709 So.2d 1065 (La. 4th Cir. 1998) (citations omitted).

Head claims that Chesapeake was negligent for not requiring welders to have guards covering the grinder discs. [Doc. #1-1 at ¶ 6]. Even if the Court assumed that Chesapeake was in fact negligent in not requiring welders to use a grinder guard, this is insufficient for Head to circumvent Chesapeake's tort immunity under the Louisiana Workers' Compensation Act.

Accordingly, the Court finds that Head's exclusive remedy is based in the recovery of workers' compensation benefits, and his tort claims against Chesapeake must be dismissed.

## II.     Validity of Plaintiff's Remaining Claims

The Court recognizes Head's desire to warn other workers of the dangers of removing guards from their grinders. Head has suffered a tragic and life-altering injury in what may have been a preventable accident. It is obvious to the Court that Head genuinely wishes to educate his colleagues about safety given his experience with what appears to be the routine removal of the safety guard by welders. However, there is no legal theory by which the Court may order Chesapeake to hire Head in this capacity.

Head also states in his opposition that he believes Chesapeake may be liable for the potentially defective box of grinder discs. If the box of grinder discs were in fact defective, the proper cause of action would be a product liability claim against the manufacturer of the discs, not Chesapeake.

Finally, Head includes as one of his claims for relief that Chesapeake be ordered to reimburse Liberty Mutual for the benefits paid to him. The Court will not address this claim because Head lacks standing to seek relief on a behalf of Liberty Mutual. *See Summers v. Earth Island Institute,*

10

129 St. Ct. 1142, 1149 (2009).

**III.     Liberty Mutual's Claims**

As stated *supra*, Liberty Mutual filed an Intervenor Complaint seeking reimbursement from Chesapeake out of the proceeds of any judgment which may be rendered in this matter in favor of Head. [Doc. #12].  Because the Court finds that Plaintiff's claims must be dismissed as a matter of law, Liberty Mutual's claims, which are dependant on the success of Plaintiff's claims,  must also be dismissed.

**CONCLUSION**

For the  foregoing  reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment [Doc. #17] is hereby **GRANTED**.  All of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.   Liberty Mutual's intervenor claims are **DISMISSED.**

**THUS DONE AND SIGNED**, this ___/5___ day of February, 2011.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

11